May it please the Court. My name is Stephen Manning, and I'm representing the petitioner Mr. Pedro Sosa Vicente. I wish to reserve a few minutes for rebuttal, and I will keep track of my own time. This is an immigration asylum case. Mr. Sosa is from Guatemala. He applied for political asylum under Section 208 of the Immigration Nationality Act, 8 U.S.C. 1181. At the time of the agency hearing, the record demonstrated, through Mr. Sosa's credible testimony, his application for asylum, the supporting documents, and the State Department report introduced by the government, that he was an active member of three opposition political parties, that he was involved in groups that politically organized the indigenous Guatemalan population, that he was the president of a rural adult education program, which was perceived by the government as subversive, that he founded a political and cultural organization focusing on the indigenous Guatemalan population, distributed political propaganda associated with these organizations, and with the assistance of a well-known anthropologist, he engaged in the first translation of one of the most important texts in the Mayan culture. For these high-profile political and cultural activities, the record before the agency demonstrates that Mr. Sosa received three highly specific death threats from the officially sanctioned government death squad known as the G2, that his house was broken into twice by armed guards of the G2 searching for him. The record shows that his family was threatened with death twice by the same G2 agents, that three close peers and fellow political and cultural leaders were disappeared by the government. He was forced to quit his work. The record shows that he moved night to night from safe house to safe house, that he seized communications with his family, except in secret, that he went into hiding, and then eventually fled the country. The record before the agency at the time of the hearing, and based specifically on the U.S. State Department country profile report for 1997, shows that high-profile political leaders were still subject to mistreatment, that individuals similar in station to Mr. Sosa, such as others involved in Mayan cultural organizing, individuals working on anthropology, had been disappeared or mistreated, and that the immigration judge found himself that there is still violence in Guatemala. Based on this record, the agency's immigration judge, deemed Mr. Sosa credible, found that he was discretionary eligible for asylum, but found that there was no past persecution had been established, and found that he had not established a well-founded fear of future persecution. On administrative appeal, the Board of Immigration Appeals affirmed. During the administrative appeal, Mr. Sosa also pressed his past persecution claim. The agency's decision about the immigration judge and the summary affirmance is legally and factually incorrect. It's legally incorrect because it contravenes this court's holding in LIM-V-I-N-S. In LIM, this court established an easily applied mechanistic rule, which we've titled the closely confronted rule. LIM, as we understand it, was intended to sort out the complex issues that arise whenever an applicant for asylum is threatened with death. That here, Mr. Sosa was closely confronted by the government, he was threatened with death, he received highly specific death threats. His close peers were disappeared by the same government agency threatening him with death. Government breaks into his home twice, threatens him, his family. That is close confrontation under LIM. Under LIM's easily applied mechanistic rule, the burden of proof flips. Mr. Sosa established past persecution per LIM's rule, and the burden should have flipped. The agency's decision is also factually incorrect. Because comparing this case to the case in Ruano v. Ashcroft, which applied LIM's closely confronted rule, Mr. Sosa has demonstrated compelling evidence of his past persecution claim. No reasonable fact finder could find, based on his testimony, his application for asylum, the background information, including the State Department report, that he has not suffered past persecution. Like the petition in Ruano, there's substantial compelling evidence that Mr. Sosa was a high-profile political and cultural leader, and the immigration judge, having reviewed the country conditions material, erred factually. And that factual error can be reviewed. Let me ask you a question. There are a couple of knots in the decision presently. Without what seem to me to be typographical errors, I would have read the immigration judge's decision as finding that there was enough reason to find past persecution up to 1996 or so. And that his decision is really based on the fact that currently, currently as of the date of his hearing, that currently there was no reason for the petitioner to fear persecution, that it was really a change in country conditions. That is really based on the paragraph on the bottom of page 8 and the top of page 9, where he then goes into, we are not, however, in 1988, 1990, or 92, 4. We're now in 1998. And then he goes out with his decision. Is that correct? I would agree with that interpretation. Well, then there are two knots in the paragraph that I don't understand. And that's at the bottom of page 8. The first says Kirk was sick, but also I would not find a clear probability. Or maybe he's talking about withholding as opposed to asylum. But one, two, three, four, the fifth line down in the paragraph, having found the link or probable link, not clearly probable, but simply there is enough logic and circumstance that a person, a reasonable person in his situation would have a well-founded fear if he had to return to Guatemala. And then he goes on, however, we're not there. The problem with this case is not why you have the fear before, but now. Are those knots errors or are they correct? As an interesting point, it does appear to be irreconcilable. At one point he's saying that there's a well-founded fear, and at the other he's saying he hasn't. My understanding would be that the immigration judge in the very first paragraph that you were reciting was discussing withholding a removal. And he was attempting to tie that into the credential conditions. And somehow that he had deemed this adjudication when the first paragraph to be taking place at a time much earlier than it really was. So even though it's related to the withholding of removal, that's one possibility. One possibility. However, he would be stating the incorrect standard for withholding. If he's conflating the clear and probable evidence with a reasonable question. Your understanding of the report, do you read the report as his finding that there was past persecution or that there wasn't? I think it's more complicated. Let me ask on the same thing. Because isn't this the case, and I apologize because sometimes I put it together, but isn't this the case where, in effect, he got the petitioner's attorney to say there's not past persecution here because he wasn't physically injured or physically touched. So it's like the immigration judge just kind of jumped over that issue thereafter and didn't, I don't think he dealt with it in his disposition, because he got the lawyer to say earlier on, and there's some dialogue someplace which I've been looking for and haven't been able to spot, that, okay, he wasn't killed or harmed, so it's not past persecution. Isn't that right, counsel? And the counsel ultimately acceded to the IJ's demands. So when you get to this dialogue that Judge Reinhart is talking about, it's like past persecution has been taken out of the mix somehow, and he's only talking about whether there had been a well-founded fear at the time, but then later in time there wasn't a basis for a well-founded fear. I'm trying to figure out what he's saying here as well. That's possible. The discussion between the petitioner's counsel and the immigration judge was all done in hypotheticals, and our understanding of that part of the transcript is, hypothetically speaking, counsel, if I find that he's only been mistreated and harassed, would you agree that there's no past persecution? Based on the law, that would not be past persecution, so she concurred. But that wasn't, I don't believe she was actually concurring that there was no past persecution. Perhaps the immigration judge then understood that he was only going to find mistreatment and harassment, which would not constitute past persecution, even though the claim was based on past persecution and he should have engaged in his decision in a past persecution analysis. Well, the difference, I suppose, is that Christian's questions are suggesting, if he's correct, that he would have been saying that he had a well-founded fear rather than past persecution in, say, 1996, but that he doesn't now. The only difference would be whether it was a well-founded fear or past persecution would be whether the verdict was changed. If it's past persecution, then the government has to rebut that with a presumption that it continues. If it's only well-founded fear, there's no presumption that it continues. Is that right? That's correct. And either way, it's the decision that he made, basically, was that under current country conditions, there is no reason for a well-founded fear. In one case, he would have had to overcome a presumption in order to reach that. In another, he would just have to do that without error. I agree. My time is up. Well, that's OK. We'll give you two minutes to move on. What's your position as to whether he made a proper analysis of current conditions based on the country report? The immigration judge made factual errors when he reviewed the country conditions report exclusively to the exclusion of all other tests and all other evidence in the record. First, he misunderstood the petitioner's claim for asylum, that he misunderstood the concept of past persecution, that that was the claim that was being raised. And based on that misapprehension, he went searching through the profile, the country conditions report, the country conditions information, to find some link to connect the claim with the record, with the documentary evidence. But he misunderstood the claim, the factual basis for the claim, and therefore it would be impossible for him to make a correct ruling on the country conditions having misunderstood the facts in the case. He misunderstood the facts in the case based on the fact that he misunderstood that Mr. Sos himself was exactly the individual named in the report as having been disappeared or mistreated. He was a high-profile political leader, a cultural leader, but those individuals in the report he cites have continued to receive mistreatment by the government. I'm not sure if that answered your question. That was a good try. Thank you. Thank you. Good morning, Your Honors. My name is Michael Robinson. I'm with the Department of Justice. I represent the Attorney General on this matter. I believe Judge Clifton's analysis is exactly correct as to what happened. There was a colloquy at the hearing, and that can be found if you have the excerpts of the record. Ultimately, I found it in your brief. Okay. Just now. It takes place at pages 75 and 76 of the record, and at the floor pages 97 and 98 of the excerpts of record citations. At the very end of the colloquy, the immigration judge asked, if there is, tell me what the past persecution is. The answer, no. Okay. There is no past persecution. Correct. Answer. Correct. It's on that basis that the immigration judge, I believe, determined that he did not need to undertake a past persecution analysis. But has he applied the right standard in doing so? He's basically saying, well, he wasn't killed. It doesn't rise to the level, he wasn't, question, fear of being killed, but he wasn't either harmed or he wasn't, in fact, harmed, and so there isn't any past persecution. Do you concur with that? And the question is by the I.J. Yes, basically the I.J. has established the standard. Well, if you don't have somebody who killed and physically harmed, there's not past persecution. But that's not the standard that's been set in our cases, is it? Your Honor, I think it's a close question as to whether this would satisfy the requirements. I don't think that that's an issue that the court needs to reach. Certainly, this is a person who has been represented by counsel who, at that time, determines that she was not making a past persecution claim. That claim is waived and, therefore, is not public. Well, the claim was made in the papers both before and after this. Is it really fair to say it's waived, or is it somebody who's deciding to make a strategic retreat and fight on another issue before an I.J. whose mind seems to be made up as to what constitutes past persecution? Your Honor, the attorney conceded that she was not making a past persecution claim, or at least that there was not past persecution. Given that, the I.J. certainly cannot be faulted for not undertaking a past persecution analysis. Assuming, however, that the I.J. that this was properly presented before the I.J. and the I.J. should have undertaken a past persecution analysis, as Judge Reinhart suggests, what that does is it would shift the burden onto the government to establish that there is no to rebut the presumption that would follow a well-founded fear of future persecution. Either way, you would agree that he did say that it would be a reasonable well-founded fear as of 1994 and 1996, or would it be afterwards? Yes, Your Honor. So the only difference, then, is he relied ultimately on the country conditions after 1996. Correct, Your Honor. And the only difference is whether in reaching that conclusion he had to overcome a presumption or whether it was just a straight determination. That's correct, Your Honor. And it was possible that the I.J. could have determined, despite finding or a lack of finding that there was no past persecution, could have considered at that point whether there was, in fact, future persecution. But whether he had a well-founded fear of future persecution. He did want, or whether it had disappeared because of the changing country conditions. Correct. Now, if there was past persecution, then we'd have to remand, I assume. If we said, A, it isn't waived, B, there was past persecution, we would have to remand because he didn't apply the presumption. No, Your Honor, I don't believe that that's necessary in this case because the analysis that the I.J. did undertake would have been the same sort of analysis whether he was overcoming a rebuttable presumption or whether he was making a determination ab initio of a well-founded fear of future. And you agree to do that, to say we can now decide what the I.J. would have done had he considered the issue under the proper standards? Your Honor, what – As a general proposition. No, but – It's something you're arguing we can't do. I'm saying generally you can't do that. In these particular circumstances, however, what the judge's responsibility is to focus on virtually the same factors because the judge is determining in either case whether there is a well-founded fear of future persecution. In this case, he did, based on the country reports, country reports that now have been pointed to by the Supreme Court in Ventura, by this Court in Gonzalez-Hernandez, as sufficient to make the kind of individualized determination with regard to future persecution and changed country conditions. And that's exactly what the I.J. here did. The I.J. I'm wondering if it was sufficiently particularized for this particular person's situation, given his role under the Zaheerite as a leader in these indigenous movements. If you look at the case in Gonzalez-Hernandez, the kinds of things that the Court considered and the kinds of things, in fact, that the Supreme Court points out in Ventura are things like whether this is a high-profile – whether this is a party leader or high-profile activist. Those are the kinds of things that, in fact, the I.J. in this case did consider. He did consider that this was a student activist. He was a member of the kinds of guerrilla organizations that had dissolved and started to pursue peaceful political action. As a result, the U.R.N.G., for example, was one of the memberships. The I.J. decided here that this student activist was not the kind of person for whom there was a continuing evidence of violence. So he makes exactly the kind of personalized and individualized determination. Well, what he says is with regard to his legal group activities, there is no information contained in the report that would indicate that student leaders have been targeted. There's nothing in the report that says it. Well, he makes the determination that the report says that the people who are being targeted are high-profile leaders, high-profile activists, party leaders, and that he, as a student activist, in doing the kinds of things that he testified to at the hearing, was not a person who qualified at that level. Therefore, it seems that this is more than enough, more than meets the standard that was accepted in Gonzales-Hernandez for the kind of individualized determination we're talking about with regard to changed country conditions. And that's exactly what the Supreme Court suggested was appropriate in the Ventura case. So we believe that even if we take this as a case in which there was a shift, there should have been a determination of past persecution, which would have given rise to a rebuttable presumption, that there's more than enough substantial evidence in this case to support the IJ's determination that it had been overcome based on the changed country conditions. If, however, the court believes that there needs to be, that there wasn't and should have been a past persecution analysis, we then argue that it should be revanded for the IJ to make that determination. Thank you. Two points. First, in Gonzales, the matter that the respondents cite to, at the very last paragraph, the court writes, regarding the Ventura remand country conditions issue, this does not mean, of course, that an applicant lacks to disreview of the VI's determination of the country conditions issue. But where the VIA rationally construes an ambiguous or somewhat contradictory country report, provides an individualized analysis of how that changes, of how that affects the petitioner, then that will be given deference under Gonzales. Here, however, the immigration judge, the agency, did not rationally construe the country report. The immigration judge did not rationally construe the evidence in the record regarding Mr. Sos as high-profile political cultural activities, and he did not rationally construe or link the record, the documentary evidence, with Mr. Sos' testimony in his asylum application. In Lopez, the issue of past persecution, the court found, this court found, that the record was compelling, that there was no, when the record is compelling regarding the issue of past persecution, no remand is necessary on that issue. However, what Lopez did remand on was whether the government could rebut that presumption. And let's just read the questions. Thank you. Thank you. Thank you both very much. Thank you. The next case for argument is Calhoun. Crimeville Sawmill Company v. Longview Fibers.
judges: Reinhardt, Silverman, Clifton